UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ENEQUE JEAN-LOUIS, ANGEL PINAREYES,
TOMAS TORRES-DIAZ, ROSELIO MENDOZA,
EDWIN PEGUERO, JONNATAL PERALTA, and
ROBIN SORIANO, Individually and on Behalf of
All Other Persons Similarly Situated,    09 Civ. 6831 (RJH)

               Plaintiffs,

                                               **SECOND AMENDED**
   -against-                             **COMPLAINT AND**
                                               **JURY DEMAND**

METROPOLITAN CABLE
COMMUNICATIONS, INC., RICHARD PANG,
JOHN SNYDER, BILL BAKER, PATRICK
LONERGAN, JOHN GAULT,
and TIME WARNER CABLE
OF NEW YORK CITY,
A DIVISION OF TIME WARNER
ENTERTAINMENT COMPANY, L.P.,

               Defendants.
-----------------------------------------------------------------X

       Plaintiffs ENEQUE JEAN-LOUIS, ANGEL PINAREYES, TOMAS TORRES-DIAZ,

ROSELIO MENDOZA, EDWIN PEGUERO, JONNATAL PERALTA, and ROBIN SORIANO

(hereafter collectively "Plaintiffs"), by counsel and on their own behalf and on behalf of all

others similarly situated, individually and as a Collective Action Representative, for their

Collective Action Complaint against Defendants METROPOLITAN CABLE

COMMUNICATIONS, INC. ("Metropolitan Cable"), RICHARD PANG, PATRICK

LONERGAN, JOHN SNYDER, BILL BAKER, JOHN GAULT, TIME WARNER CABLE OF

NEW YORK CITY, A DIVISION OF TIME WARNER ENTERTAINMENT COMPANY,

L.P., ("TWCNYC") (hereafter collectively "Defendants"), allege, upon information and belief, except for the allegations concerning Plaintiffs' own actions, as follows:

## NATURE OF THE ACTION

1. Plaintiffs allege on behalf of themselves and other similarly situated, current and former cable installers/technicians employed by Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are: (i) entitled to unpaid wages from Defendants for work performed for which they did not receive any compensation, as well as overtime work for which they did not receive overtime premium pay and, when they were working on a piece-work basis, were not paid premium pay for the piece work cable installations completed during hours worked in excess of forty hours in a workweek, as required by law, (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq. and (iii) entitled to damages pursuant to 29 U.S.C. §215(a)(3) due to defendants' retaliatory misconduct against them for asserting their rights under the FLSA.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3. Plaintiffs' claims involve matters of national or interstate interest.

4. Defendants are engaged in an enterprise, telecommunications, which is engaged in interstate commerce.

5. The annual gross business volume of Defendants' businesses is at least $500,000.00.

6. Plaintiffs work for the communication industry, which is an instrumentality of interstate commerce, and handle goods and materials that have been moved in or produced for interstate commerce.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claims occurred in this District.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

9. Plaintiff Eneque Jean-Louis ("Jean-Louis") was, at all relevant times, an adult individual, residing in New York, New York. From in or about 2006 until July 2009, Plaintiff was employed by Defendants as a cable technician/installer.

10. Plaintiff Angel Pinareyes ("Pinareyes") was, at all relevant times, an adult individual, residing in the Bronx, New York. From in or about 2007 until in or about 2008, Plaintiff was employed by Defendants as a cable installer/technician.

11. Plaintiff Tomas Torres-Diaz ("Torres-Diaz") was, at all relevant times, an adult individual, residing in Bronx, New York. From in or about 2005 through the present, Plaintiff has been employed by Defendants as a cable installer/technician.

12. Plaintiff Roselio Mendoza ("Mendoza") was, at all relevant times, an adult individual, residing in New York, New York. From in or about 2002 through the present, Plaintiff has been employed by Defendants as a cable installer/technician.

13. Plaintiff Jonnatal Peralta ("Peralta") was, at all relevant times, an adult individual, residing in Bayonne, New Jersey. From in or about 2005 through the present, Plaintiff has been employed by Defendants as a cable installer/technician.

14. Plaintiff Edwin Peguero ("Peguero") was, at all relevant times, an adult individual, residing in New York, New York. From in or about 2005 through the present, Plaintiff has been employed by Defendants as a cable installer/technician.

15. Plaintiff Robin Soriano ("Soriano") was, at all relevant times, an adult individual, residing in New York, New York. From in or about 2002 through the present, Plaintiff has been employed by Defendants as a cable installer/technician.

16. Defendant Metropolitan Cable is a corporation organized and existing pursuant to the laws of New York, with its principle place of business at 2658 Borough Place, Woodside, New York 11377. According to its website, http://www.metrocablecom.com/, Metropolitan Cable has extensive knowledge of the cable industry and provides RF Installation, Broadband Installation, Tap Audit, Converter Exchange Programs, Construction, System Upgrade, MDU Construction and Block Wiring, with "over 100 years of hands on cable experience".

17. Defendant, TWCNYC, a leading telecommunications, media and entertainment company, is a corporation organized and existing pursuant to the laws of Delaware, with its place of business at 60 Columbus Circle, 17th Floor, New York, New York 10023. According to its web site, www.timewarnercable.com/Corporate/about/highlights /default.html, TWCNYC is the second-largest cable operator in the U.S., with technologically advanced, well-clustered systems located mainly in five geographic areas —

4

New York State (including New York City), the Carolinas, Ohio, southern California (including Los Angeles) and Texas.

18. Defendants Metropolitan Cable and TWCNYC are establishments that, both individually and collectively, are engaged in related activities performed through a unified operation or control, for common business purposes.

19. Defendant TWCNYC employed Plaintiffs and other similarly situated employees by using a subcontractor system. Defendant Metropolitan Cable is a subcontractor of Defendant TWCNYC. Defendants TWCNYC and Metropolitan Cable controlled and supervised the work performed by Plaintiffs and other similarly situated individuals.

20. Defendant RICHARD PANG ("Defendant Pang") serves as President of Defendant Metropolitan Cable.

21. Defendant PATRICK LONERGAN (Defendant Lonergan") serves as Vice President of Defendant Metropolitan Cable.

22. Defendant JOHN SNYDER ("Defendant Snyder") serves as Secretary of Defendant Metropolitan Cable.

23. Defendant BILL BAKER ("Defendant Baker") serves as General Manager of Defendant Metropolitan Cable.

24. Defendant JOHN GAULT ("Defendant Gault") serves on the Board of Directors of Defendant Metropolitan Cable.

25. Each of the individual defendants engaged in business in New York and other locations throughout the United States. Each individual defendant is sued individually and in his capacity as an owner, officer and/or agent of Defendant Metropolitan Cable.

26. Defendant Metropolitan Cable is operated jointly by individual defendants Pang, Lonergan, Snyder, Baker, and Gault together with Defendant Metropolitan Cable.

27. Each individual defendant was the principal, agent, partner, joint venture, controlling shareholder of the other defendants, and/or was engaged with the other defendants in a joint enterprise for profit, and bore such other relationships to the other defendants so as to be liable for their conduct.

28. Upon information and belief, Defendant Pang had responsibility for Defendants' wage-hour policies and practices and retaliatory practices.

29. Upon information and belief, Defendant Lonergan had responsibility for Defendants' wage-hour policies and practices and retaliatory practices.

30. Upon information and belief, Defendant Snyder had responsibility for Defendants' wage-hour policies and practices and retaliatory practices.

31. Upon information and belief, Defendant Baker had responsibility for Defendants' wage-hour policies and practices and retaliatory practices.

32. Upon information and belief, Defendant Gault had responsibility for Defendants' wage-hour policies and practices and retaliatory practices.

33. Defendants have maintained a common practice of, *inter alia,*: (1) not paying for all hours worked, (2) not paying overtime premium pay for work in excess of 40 hours a week and (3) not paying a premium rate for piecework installed during work hours in excess of 40 hours a week.

34. Defendants were joint employers of plaintiffs and their similarly situated co-workers.

35. Defendants operated as a single enterprise.

36.     The named plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to 29 U.S.C. § 216(b). Person similarly situated who may opt-in to this action under FLSA are those who are and/or were employed by defendants at any time after August 3, 2006.

## COLLECTIVE ACTION ALLEGATIONS

37.     Pursuant to 29 U.S.C. § 207, Plaintiffs seek to prosecute their FLSA claims as a nationwide collective action on behalf of all persons who are or were formerly employed by Defendants throughout the United States, as cable installers/technicians at any time since August 3, 2006 to the entry of judgment in this case (the "Collective Action Period") and who were not paid for hours that they actually worked, as well as for overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek and, when they were working on a piece work basis, were not paid premium pay for piece work cable installations they completed during hours worked over forty hours per work week (the "Collective Action Members").

38.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number could be made are presently within the sole control of the Defendants, there are at least 100 Collective Action Members during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

39.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of

7

employment law and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with those members of this collective action.

40.  A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

41.  Questions of law and fact common to Collective Action Members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact are:

   a. whether the Defendants employed, either individually or jointly, the Collective Action members within the meaning of the FLSA;

   b. what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

   c. whether Defendants violated C.F.R. § 516.4 by failing to post or keep posted, a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area in which Plaintiffs and Collective Action Members are employed;

   d. whether Defendants failed to pay Plaintiffs and the Collective Action Members for all hours which they worked and, whether they received proper overtime compensation for hours worked in excess of forty hours per

8

workweek, in violation of the FLSA and the regulations promulgated thereunder;

e. whether Defendants' violations of the FLSA were willful as that term is used within the FLSA; and

f. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

42. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## STATEMENT OF FACTS

43. Plaintiffs worked as cable installers/technicians for Defendants, installing TWCNYC equipment at various premises. Their work was performed in the normal course of the Defendants' business and was integrated into the business of the Defendants.

44. At all times relevant to this action, Defendants were the joint employers of the Plaintiffs within the meaning of the FLSA. Defendants do not act entirely independent of each other and are not completely dissociated with respect to the employment of the Plaintiffs. Defendant TWCNYC, together with Metropolitan Cable, maintains authority, control and supervision over Plaintiffs and established the employment policies that were applied to Plaintiffs.

45. Specifically, TWCNYC provided on-site supervision over the Plaintiffs, provided Plaintiffs with uniforms and identification badges, directed Plaintiffs as to locations in which they were to work, required Plaintiffs to use only Defendant TWCNYC equipment, restricted Plaintiffs' installations to Defendant TWCNYC's networks, restricted Plaintiffs' installations

to Defendant TWCNYC's customers, provided on-site supervision over the Plaintiffs, provided on-site training to the Plaintiffs, regularly furnished training guidelines to the Plaintiffs, required the Plaintiffs to comply with Defendant TWCNYC's work specifications and rules of conduct, directed Plaintiffs as to the time "windows" in which they were to perform specific installations of Defendant TWCNYC's equipment at the residences of Defendant TWCNYC's customers, required Plaintiffs to communicate at the completion of each installation directly to Defendant TWCNYC, and directed Plaintiffs to fill out daily paperwork documenting completed assignments.

46. Defendants benefited financially from the work performed by Plaintiffs.

47. Defendant Metropolitan Cable acts directly in the interest of TWCNYC in relation to any supervision it provided over Plaintiffs in the workplace.

48. As joint employers, Defendants are both individually and jointly responsible for compliance with all applicable provisions of the FLSA.

49. Plaintiffs often worked in excess of 40 hours a week, yet the Defendants willfully failed to pay Plaintiffs proper compensation for all of the hours worked by them as well as overtime compensation of one and one-half times their regular hourly rate and, when Plaintiffs were working on a piece-work basis, Defendants willfully failed to pay premium compensation for the piece work they completed during hours worked in excess of 40 hours in a workweek.

50. Defendants regularly required Plaintiffs to report to Defendant Metropolitan Cable's warehouse prior to the first scheduled installation appointment of the day, often as early as 7:00 or 7:30 a.m., for the purpose of issuing Plaintiffs their work orders and equipment. Defendants willfully failed to maintain records regarding this time, to

compensate Plaintiffs for these hours worked, or to include this time in their calculation of overtime premium pay due to Plaintiffs.

51.    Defendants regularly required Plaintiffs to take measures at the beginning of the work day to ensure that their work vehicles were in operable condition. Plaintiffs were required to fill the vehicles' tires with air and the tanks with fuel. Defendants willfully failed to maintain records regarding the time Plaintiffs spent ensuring the road-worthiness of their vehicles, to compensate Plaintiffs for this time, or to include this time in their calculation of overtime premium pay due to Plaintiffs.

52.    Defendants regularly required Plaintiffs to work through their lunch breaks but did not compensate them for this time. Defendants willfully failed to maintain records establishing that Plaintiffs were not working through the lunch break, willfully failed to compensate Plaintiffs for any working lunch breaks, and willfully failed to include any working lunch breaks in their calculation of overtime premium pay due to Plaintiffs.

53.    Defendants regularly required Plaintiffs to return to Defendant Metropolitan Cable's warehouse after completion of their installation jobs for the day, for the purpose of returning unused equipment and completed work orders. Defendants willfully failed to maintain records regarding this time, to compensate Plaintiffs for this time, or to include this time in their calculation of overtime premium pay due to Plaintiffs.

54.    Throughout the Collective Action Period, the Defendants likewise jointly employed other, similarly situated cable installers/technicians. Such individuals have also worked in excess of forty hours a week as described in paragraphs 1-53, yet the Defendants have likewise willfully failed to pay them compensation for all of the hours worked by them as well as overtime compensation of one and one-half times their regular hourly rate or, when

they were working on a piece-work basis, Defendants willfully failed to pay Collective Action Members premium compensation for the piece work they completed during hours worked in excess of forty hours.

55. The exact number of such individuals is presently unknown, but within the sole knowledge of the Defendants and can be ascertained through appropriate discovery.

56. During the course of Plaintiffs' employment, and while Defendants employed Plaintiffs and the Collective Action Members, the Defendants failed to maintain accurate and sufficient time records.

57. Throughout all relevant time periods, Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA.

58. Upon information and belief, Defendants Pang, Lonergan, Snyder, Baker and Gault instructed employees about the same employment practices, utilized the same employment practices, jointly managed the operation of Defendant Metropolitan Cable, collected and maintained documents, oversaw all employees of Defendant Metropolitan Cable and occasionally engaged in communications with Plaintiffs.

## DEFENDANTS' RETALIATORY MISCONDUCT

59. Defendants have subjected the Plaintiffs and the collective action members to adverse employment actions as a result of their assertion of their rights under the FLSA.

60. For example, shortly after joining this action, one opt-in plaintiff, Tomas Torres Diaz, stopped getting most of the lucrative phone installation assignments that he had been receiving for approximately five years.

61. Phone installation work can pay as much as $70 per job, making it the most lucrative work available to Metropolitan Cable installers.

12

62. Approximately two weeks after his consent to join this matter was filed, Torres-Diaz' assignments changed to lower-paid, predominantly non-phone work, paying only $9 to $19 per job.

63. Upon information and belief, Defendant Metropolitan Cable has recently engaged in a program of enhanced hiring of new cable installer/technicians, has been diverting work and favored routes to the new employees and has provided them with favored installation jobs over those employees with more seniority who are participating in this action.

64. Opt-in plaintiff Roselio Mendoza, who has worked at Metropolitan Cable for eight years, joined the lawsuit in mid-December 2009. Since that date, he has been given worse shift hours and worse individual jobs, and his salary has dropped from an average of $1,200.00 to $1,000.00 per week.

65. Opt-in plaintiff Edwin Peguero, who has worked at Metropolitan Cable for more than four years, used to have a shift that ran through the early evening. Since he joined the case on January 4, 2010, his shift now starts at 11:00 a.m., and he rarely gets home from work before 11:00 p.m.

66. For years Mr. Peguero installed telephones, often six or seven per day. These are the most lucrative installation jobs to be assigned. Since joining the lawsuit, he is no longer a phone tech, for reasons that have not been explained, and his income has plummeted by hundreds of dollars per week.

67. Opt-in plaintiff Jonnatal Peralta has been a Metropolitan Cable for the past four years. Since he joined this lawsuit on January 4, 2010, Mr. Peralta is no longer given modems to install (which paid approximately $67.00 a piece) and is instead given reconnects, upgrades and disconnects, which pay between $9.00 and $19.00 a piece.

68. Mr. Peralta's income has plummeted by hundreds of dollars per week since he joined the case.

69. Opt-in plaintiff Robin Soriano has worked at Metropolitan Cable for more than eight years. Since he joined the lawsuit, on December 15, 2009, he has been moved to the late shift.

70. Mr. Soriano used to leave the warehouse at approximately 6:00 p.m. Now, his shift ends at 7:00 p.m. and he often cannot leave the warehouse until much later.

71. Mr. Soriano can no longer pick up his young son after school as he did for years. Now, his son's aged grandmother must leave her disabled husband and travel to pick up his young son. This has caused great family hardship.

72. Additionally, Mr. Soriano is no longer receiving the desirable work orders he received for years. His income has plummeted many hundreds of dollars per week since he joined the lawsuit.

73. These individuals have all noted that Metropolitan Cable has hired as many as twenty or thirty new cable installer/technicians since the instant action was filed, and that these individuals appear to be assigned the more lucrative jobs and favorable routes and schedules and hours despite their lack of seniority.

74. No cable installer/technician who has been hired within the past year has opted to join the within action.

75. Upon information and belief, Defendant Lonergan has sought to intimidate the cable installer/technicians by showing them a list identifying the Plaintiffs and those individuals who have opted in to the collective action, in order to chill the cable

14

installer/technicians from engaging in protected activity by identifying those not on the list as "the good guys".

76. Upon information and belief, and without limitation, other Defendants have instructed Plaintiffs and opt-in members of the collective action, in words and substance, that if they were "on the list" of those participation in the instant action, they were not "one of the good guys."

77. Upon information and belief, Defendants informed Plaintiffs and opt-in members of the collective action, in words and substance that those who chose to participate in the instant action would receive less valuable work routes due to their engagement in the protected activity.

78. Plaintiffs and opt-in members of the collective action are now assigned less valuable work routes and assigned less valuable equipment to install by the Defendants since they joined the action, and are earning substantially less as a result.

79. This retaliatory misconduct is a deliberate effort by Defendants to deter and intimidate Plaintiffs from pursuing the instant action, and to deter and intimidate other Metropolitan Cable employees from joining the instant action or cooperating with the prosecution of the instant action.

### CLAIM FOR RELIEF: <br> FAIR LABOR STANDARDS ACT

80. Plaintiffs, on behalf of themselves and all Collective Action Members, reallege and incorporate by reference paragraphs 1 through 79 as if they were set forth again herein.

81. Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

82. At all relevant times, Defendants have been and continue to be, employers and/or joint employers, engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

83. At all relevant times, Defendants have jointly and/or individually employed, and/or continue to individually and/or jointly employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

84. At all relevant times, Defendants, individually and/or jointly, suffered or permitted the Plaintiffs and the Collective Action Members to work for them.

85. At all relevant times, the Defendants had a policy and practice of refusing to pay premium overtime compensation to cable installers/technicians for the hours they worked in excess of forty hours per workweek as well as compensation for all hours worked by them.

86. As a result of the Defendants' willful failure to compensate its cable installers/technicians, including Plaintiffs and the Collective Action Members for all of the hours worked by them, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, the Defendants have violated and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

87. As a result of the Defendants' failure to record, report, credit and/or compensate Plaintiffs and the Collective Action Members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

88. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

89. Due to the Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the Collective Action members, are entitled to recover from the Defendants their unpaid wages as well as overtime compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b)

## CLAIM FOR RELIEF:
## 29 U.S.C. § 215(a)(3)

90. Plaintiffs, on behalf of themselves and all Collective Action Members, reallege and incorporate by reference paragraphs 1 through 79 as if they were set forth again herein.

91. Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

92. At all relevant times, Defendants have been and continue to be, employers and/or joint employers.

93. Plaintiffs opposed Defendants' violations of the FLSA and participated in this action seeking to redress these unlawful practices.

94. At all times relevant to this complaint, Defendants have had knowledge of Plaintiffs' protected activity.

95. Defendants have engaged and continue to engage in adverse employment actions against Defendants that is causally related to the Defendants participation in the protected activity.

96. As a result of the Defendants' willful failure to compensate the Plaintiffs at the same rate and in the same manner as they are compensating those cable installers/technicians

who have not joined this action, and as a result of Defendants' retaliation, threats and intimidation, the Defendants have violated and continue to violate, § 15(a)(3) of the FLSA.

97.     The foregoing misconduct constitutes impermissible retaliation against Plaintiffs for seeking legal redress to Defendants' failure to pay overtime wages.

98.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, 29 U.S.C. § 215(a)(3).

99.     Due to the Defendants' Title VII violations, Plaintiffs, on behalf of themselves and the Collective Action members, are entitled to recover from the Defendants damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a nationwide collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all Collective Action Members, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

c. An award of unpaid wages as well as overtime compensation due under the FLSA;

d. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay for all hours worked as well as overtime compensation pursuant to 29 U.S.C. § 216;

e. An award of liquidated and/or punitive damages as a result of the Defendants' willful retaliation against Plaintiffs for their engagement in protected activities, pursuant to 29 U.S.C. § 216,

f. An award of prejudgment and post judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees; and

h. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: Katonah, New York
May 4, 2010

ASHER, GAUGHRAN LLP

By: _____
Julie Gaughran (JEG 6790)

Rachel Asher (RSA 2610)
223 Katonah Avenue
Katonah, New York 10536
(914) 232-0934

KLAFTER OLSEN & LESSER LLP
Fran L. Rudich
Jeffrey A. Klafter
Seth R. Lesser
Two International Drive, Suite 350
Rye Brook, New York 10573
(914) 934-9200

BERGER & ASSOCIATES
Bradley Berger
321 Broadway
New York, New York 10007
(212) 571-1900

*Attorneys for Plaintiffs*